IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRP COLLEAGUE INC. and BALDWIN KRYSTYN SHERMAN PARTNERS, LLC, | Case No. 1:20-cv-03695-LMM |
| Plaintiffs, | Hon. Leigh Martin May |
| v. | |
| EDWARD "TEDDY" GILLEN and EDGEWOOD PARTNERS INSURANCE CENTER INC. d/b/a EPIC INSURANCE BROKERS & CONSULTANTS, | |
| Defendants. | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants Edward "Teddy" Gillen ("Gillen") and Epic Insurance Brokers & Consultants ("EPIC") (together "Defendants") and hereby file their Motion for Summary Judgment, showing this honorable Court as follows:

I.    **INTRODUCTION AND SUMMARY STATEMENT OF FACTS**

Defendants move for summary judgment on all counts of Plaintiffs' Complaint, i.e., Count I Violation of Defend Trade Secrets Act (Gillen), Count II Violation of the Georgia Trade Secrets Act (together the "Trade Secret Claims"), Count III Breach of Contract (Gillen), Count IV Tortious Interference with Contract,

Business Relationships and Expectancies (EPIC), and Count V Attorneys' Fees.

The Trade Secret Claims fail because, *inter alia,* Plaintiffs testified that all ninety-four (94) documents identified as a trade secret (the "Purported Trade Secrets")[1] (a) were not marked confidential or a trade secret;[2] (b) no discussions with Gillen identifying documents as confidential or a trade secret;[3] (c) no tracking of the use or disclosure of the documents;[4] (d) many were provided to third parties with no prohibition against disseminating them to others;[5] (e) many are third party documents,[6] and (f) there is no evidence of any use or disclosure of the Purported

---

[1] Plaintiff Baldwin Krysten Sherman Partners, LLC's Supplemental Answers to Defendant Edgewood Partners Insurance Center, Inc. d/b/a EPIC Insurance Brokers & Consultants' First Interrogatories ("BKS Supp. Answers") [Doc. 183-1], p. 3.

[2] 30(b)(6) Deposition of Southern Protective Group, LLC ("SPG Dep.") p. 39 ln. 11 – p. 40 ln. 1; *see also, e.g.,* SPG Dep. p. 58 ln. 25 – p. 59 ln. 3; p. 62 ln. 9-11; p. 71 ln. 1-4; p. 76 ln. 15-18. Excerpts of SPG Dep. are attached as Exhibit B. EPIC00023882 was the only Purported Trade Secret marked confidential, which occurred in "2012, 2013-ish." SPG Dep. p. 200 ln. 9 – p. 203 ln. 16.

[3] SPG Dep. p. 39 ln. 4-10; *see also, e.g.*, SPG Dep. p. 59 ln. 4-8; p. 62 ln. 12-15; p. 71 ln. 5-9; p. 76 ln. 19-23; BKS Dep. p. 82 ln. 24 – p. 83 ln. 22.

[4] SPG Dep. p. 40 ln. 3-20; *see also, e.g.*, SPG Dep. p. 59 ln. 9-25; p. 62 ln. 16-19; p. 71 ln. 10-13; p. 76 ln. 24 – p. 77 ln. 3.

[5] *See infra* note 45.

[6] SPG Dep. p. 53 ln. 25 – p. 54 ln. 8; p. 55 ln. 12-14; p. 57 ln. 15-19; p. 60 ln. 20 – p. 61 ln. 8; p. 62 ln. 2-4; p. 63 ln. 14-16; p. 65 ln. 16-20; p. 67 ln. 21 – p. 68 ln. 1; p. 69 ln. 1-15; p. 70 ln. 5-21; p. 71 ln. 18-24; p. 72 ln. 18 – p. 73 ln. 15; p. 75 ln. 13-19; p. 77 ln. 18-22; p. 79 ln. 22-24; p. 81 ln. 1-9; p. 82 ln. 21-24; p. 84 ln. 14-18; p. 86 ln. 12-16; p. 88 ln. 10 – p. 91 ln. 7; p. 93 ln. 20 – p. 94 ln. 16; p. 101 ln. 5-15; p. 103 ln. 7 – p. 104 ln. 9; p. 106 ln. 17-25; p. 107 ln. 22-23; p. 112 ln. 11-17; p. 113 ln. 23 – p. 114 ln. 24; p. 116 ln. 19 – p. 117 ln. 2; p. 134 ln. 18-23; p. 138 ln. 18-21; p. 142 ln. 1-12; p. 143 ln. 1-22; p. 150 ln. 7 – p. 151 ln. 23; p. 161 ln. 5-8; p. 164 ln.

Trade Secrets (only speculation and assumptions).[7] Further, an independent forensic report confirmed no access to seventy-eight (78) of the Purported Trade Secrets following Gillen's employment with Plaintiffs,[8] and for the remaining sixteen (16) documents there is no evidence of any access after July 1, 2020, over forty days before Gillen left Plaintiffs.[9] The specious nature of the Trade Secret Claims is evident from the fact that (a) Plaintiffs required their counsel to identify the Purported Trade Secrets[10] and (b) the first time any such document was identified as a purported "trade secret" – even internally – was well after this litigation started.[11]

Plaintiffs' Breach of Contract claim alleges that Gillen breached an Employee Covenant Agreement's non-disclosure, non-solicitation, and non-competition provisions. However, (a) there is no evidence that Gillen solicited any customers; customers testified, via declaration and deposition, that they chose of their own

---

16-24; p. 166 ln. 16-19; p. 170 ln. 24 – p. 171 ln. 8; p. 174 ln. 20-25; p. 181 ln. 6-22; p. 190 ln. 21 – p. 191 ln. 5; p. 192 ln. 10-19; p. 206 ln. 21-23; p. 207 ln. 22-25; p. 210 ln. 24 – p. 211 ln. 4.

[7] 30(b)(6) Deposition of Baldwin Krystyn Sherman Partners, LLC ("BKS Dep.") p. 26 ln. 15 – p. 27 ln. 13. Excerpts of BKS Dep. are attached as Exhibit C.

[8] Declaration of Vaishnavi Palavalli, Exhibit D hereto ("Palavalli Decl.") ¶¶ 23-26.

[9] Id. ¶¶ 32, 34, 35. Because the remaining sixteen (16) Purported Trade Secrets are email attachments, date last modified is last record of access. Id. ¶ 29.

[10] SPG Dep. p. 36 ln. 11-23; *see also* BKS Dep. p. 190 ln. 6-22.

[11] BKS Dep. p. 83 ln. 23 – p. 84 ln. 10.

volition to follow Gillen to his new employer,[12] (b) the non-competition provision prohibiting "accepting or servicing" is overbroad and unenforceable, and (c) there is no evidence of access, disclosure, or use of alleged confidential information by Gillen following his resignation to join EPIC.[13]

Plaintiffs' tortious interference claim likewise fails because the record is entirely devoid of any wrongful or improper actions taken by EPIC in retaining Gillen, i.e., no evidence of predatory tactics necessary for a tortious interference, i.e., physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.[14]

After nearly two years and very substantial discovery, including eighteen (18) depositions, Plaintiffs' claims remain based upon only assumptions and speculation, with no direct evidence of wrongful conduct. Nonetheless, Plaintiffs still pursue

---

[12] Declaration of Bridget Roberts ("PGS Decl.") ¶¶ 5-6; Declaration of Dave J. Seecharan, M.D. ("Apex Decl.") ¶¶ 8-9; Declaration of Anjni G. Bhagat, M.D. ("Bhagat Decl.") ¶¶ 7-8; Declaration of Christopher J. Schaffer, M.D. ("Schaffer Decl.") ¶ 6; Declaration of Gorav Bohil, M.D. ("Veritas Decl.") ¶¶ 9-10; Declaration of Jason Centolella, Esq. ("Genesee Decl.") ¶¶ 9-10; Declaration of Luke H. West ("Relias Decl.") ¶¶ 6-7; Declaration of Martha H. Garrison, M.D. ("TMS Decl.") ¶¶ 8-9; Declaration of John W. Odom, M.D. ("Metro Decl.") ¶¶ 6-7; Declaration of Joel S. Duhl ("Duhl Decl.") ¶¶ 16-17; Declaration of Tracy Cohn ("Cohn Decl.") ¶¶ 8-9. These declarations are collectively attached hereto as Exhibit E ("Customer Decl.").
[13] BKS Dep. p. 26 ln. 15 – p. 27 ln. 13.
[14] BKS Dep. p. 70 ln. 15 – p. 72 ln. 15; p. 73 ln. 25 – p. 74 ln. 5; p. 74 ln. 22 – p. 75 ln. 23; *see also* BKS Dep. p. 26 ln. 15 – p. 27 ln. 13.

claims on ninety-four (94) Purported Trade Secrets and fifteen (15) customers that chose to follow Gillen ("Customers"). Plaintiffs have the burden to establish (a) for each Customer, that they left because of Gillen's solicitation, and (b) for each Purported Trade Secret, that it meets all elements of a trade secret claim and that such disclosure or use of each specific document proximately caused damage to Plaintiffs. Because the record is devoid of any solicitation or any use or disclosure of any "trade secrets," and none that proximately caused Defendants damage, Defendants move this Court for summary adjudication on Plaintiffs' claims in total. If not granted in total, Defendants request that it be granted as to specific Customers and/or Purported Trade Secrets, to address only disputed items going forward.

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A. SUMMARY JUDGMENT STANDARD

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment. … The party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

HCC Ins. Holdings, Inc. v. Flowers, 237 F. Supp. 3d 1341, 1350 (N.D. Ga. 2017) (citations and punctuation omitted). "The non-movant may not avoid summary

judgment with speculation, conjecture, or simply by relying on her unsworn pleadings or presenting a mere scintilla of evidence in support of her claims." Corzine v. Little League Baseball Inc., 589 Fed. Appx. 482, 483 (11th Cir. 2014). Where the moving party does not bear the burden of proof it "is not required to support its motion with affidavits or other similar material negating the opponent's claim but simply may point out to the district court that there is an absence of evidence to support the non-moving party's case." Fed. Nat'l Mortgage Ass'n v. Prowant, 209 F. Supp. 3d 1295, 1300 (N.D. Ga. 2016) (citation omitted).

B. PLAINTIFFS' TRADE SECRET CLAIMS

Plaintiffs assert claims under both the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760, *et seq.* ("GTSA"), and the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA"). Under the GTSA, a plaintiff "must prove that '(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.'" AWP, Inc. v. Henry, 1:20-CV-01625-SDG, 2020 WL 6876299, at *3 (N.D. Ga. Oct. 28, 2020) (citation omitted). The DTSA requires the same showing as the GTSA, with the addition of use in interstate or foreign commerce. Argos USA LLC v. Young, 1:18-CV-02797-ELR, 2019 WL 4125968, at *5 (N.D. Ga. June 28, 2019). As such, this motion addresses Plaintiffs' GTSA and DTSA claims together.

1. ELEMENTS OF MISAPPROPRIATION

> Under both the GTSA and the DTSA, "[a] defendant misappropriates a trade secret when the defendant acquires a trade secret from someone the defendant has reason to know acquired the trade secret by improper means, ... or when the defendant 'discloses or uses a trade secret of another, without express or implied consent, knowing that at the time of disclosure or use the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.' "

Johnson Matthey Process Technologies', Inc. v. Hovey, CV420-322, 2021 WL 5513988, at *3 (S.D. Ga. July 8, 2021) (citation omitted); see also 18 U.S.C. § 1839 (5); O.C.G.A. § 10-1-761(2). Further, "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means." O.C.G.A. § 10-1-761 (1); 18 U.S.C. § 1839(6).

## 2. NO EVIDENCE OF ANY IMPROPER TAKING, USE OR DISCLOSURE

Plaintiffs cannot establish misappropriation for any alleged trade secrets because (1) there is no evidence of improper access, (2) there is no evidence that they were ever disclosed or used; and (3) the evidence shows that that they **were not** accessed, disclosed or used. Despite Plaintiffs' allegations, its witnesses admit that there is no evidence of improper access, disclosure, or use of any Purported Trade Secrets after Gillen's employment with Plaintiffs.[15] Plaintiffs' F.R. Civ. P. 30(b)(6)

---

[15] BKS Dep. p. 25 ln. 14 – p. 27 ln. 12; p. 94 ln. 1-4; see also BKS Dep. p. 97 ln. 18 – p. 98 ln. 9 (BKS designee not aware of any access to or use of the documents identified as trade secrets after August 18, 2020); p. 101 ln. 17 – p. 102 ln. 9; p. 149

Corporate designee ("Plaintiff's Designee") conceded that Plaintiffs "don't have any direct evidence, just indirect evidence," and that such "indirect evidence" is "speculation" or "the assumption" that Gillen used the Purported Trade Secrets.[16]

The evidence confirms that Gillen had authorized access during his employment and did not access anything on the drives or share them with anyone after his departure from Plaintiffs on August 19, 2020.[17] Further, when Gillen was recruited to join EPIC, he was instructed that he could not retain any proprietary or confidential company information belonging to Plaintiffs, nor could he utilize any such information at EPIC.[18] Additionally, nothing even suggests that Gillen utilized any of such information to contact or solicit the Customers. The evidence establishes that Gillen had a personal relationship with each Customer.[19]

The record contains no evidence of access to any of the 94 Purported Trade

---

ln. 7-21; p. 192 ln. 23 – p. 193 ln. 5 ("I don't know how or whether he used [the confidential information]."); p. 198 ln. 23 – p. 199 ln. 5 (not aware of whether Gillen ever disclosed the purported trade secrets).

[16] BKS Dep. p. 26 ln. 15 – p. 27 ln. 13.

[17] BKS Dep. p. 94 ln. 1-4; Deposition of Edward "Teddy" Gillen ("Gillen Dep.") p. 292 ln. 9-14. Excerpts of Gillen Dep. are attached as Exhibit F. *See also* Declaration of Daniel J. Crawford [Doc. 16-1] ("Crawford Decl.") ¶ 3 (EPIC is not aware of any confidential or proprietary information of Plaintiffs being used by Gillen at EPIC and has not accepted any such information); Declaration of Edward "Teddy" Gillen ("Gillen Decl.") [Doc. 16-2] ¶¶ 22-24; Valentine Decl. [Doc. 19] ¶ 9.

[18] Crawford Decl. [Doc. 16-1] ¶ 2; Gillen Decl. [Doc. 16-2] ¶ 23; *see also* BKS Dep. p. 199 ln 18 – p. 200 ln. 10 (BKS not aware of anything to contradict Mr. Crawford).

[19] *See, e.g.,* Gillen Decl. [Doc. 16-2] ¶ 21; Exhibit E - Customer Declarations.

Secrets following Gillen's departure from Plaintiffs. The direct evidence establishes that 73 of the 78 Purported Trade Secrets with EPIC bates stamps[20] were last accessed on July 1, 2020.[21] The remaining five files were last accessed on July 8, August 17, and August 18, 2020.[22] For the remaining sixteen (16) documents there is no evidence of any access after July 1, 2020, over forty days before Gillen left Plaintiffs.[23] Thus, the last access date on record for 91 of the 94, all but three (3) of the Purported Trade Secrets, was no later than July 8, 2020; and **not one** of the Purported Trade Secrets shows access after August 18, 2020.[24] Gillen's last day of employment with Plaintiffs was August 19, 2020.[25] Gillen expressly was authorized to access all of the Purported Trade Secrets through the last day of his employment with Plaintiffs.[26] Plaintiffs have failed to put forward any evidence of any access (or use or disclosure) after Gillen's departure.[27] As such, any claim of mere possession

---

[20] EPIC bates stamps denote files obtained from the forensic examination. Plaintiffs designated sixteen other documents as Purported Trade Secrets that were attached to emails, which contain "Defendants" as the prefix.

[21] Palavalli Decl. ¶ 23. This last-accessed date was probably the result of a system-wide action. Id. ¶ 24.

[22] Palavalli Decl. ¶ 25.

[23] Id. ¶¶ 32, 34, 35. Because the remaining sixteen (16) Purported Trade Secrets are email attachments, date last modified is last record of access. Id. ¶ 29.

[24] Palavalli Decl. ¶¶ 26; 32, 34, 35; see Exhibit A, column "Last record access date."

[25] Valentine Decl. [Doc. 19] ¶ 9; Schieffelbein Decl. [Doc. 8-2] ¶ 21.

[26] BKS Dep. p. 93 ln. 24 – p. 94 ln. 4.

[27] BKS Dep. p. 25 ln. 25 – p. 26 ln. 21; p. 198 ln. 13 – p. 199 ln. 5.

without any evidence of use or disclosure cannot be considered misappropriation. *See, e.g.,* <u>HCC Ins. Holdings, Inc.</u>, 237 F. Supp. 3d at 1353; <u>Release Marine, Inc. v. Freeman</u>, CV421-203, 2022 WL 696796, at *5 (S.D. Ga. Mar. 8, 2022) ("The fact that Freeman possessed trade secrets obtained by proper means and later went to work for a competitor without informing Plaintiffs is insufficient to show that either Freeman or Cat 5 misappropriated those trade secrets.").

"[T]o create a triable issue in the face of direct evidence that the defendant did not use or disclose trade secrets, a plaintiff must present circumstantial evidence that demands an inference that trade secrets were used or disclosed." <u>HCC Ins. Holdings, Inc.</u>, 237 F. Supp. 3d at 1352.

> Allowing circumstantial evidence of acquisition or use of a trade secret to defeat direct evidence of non-acquisition or use offered by the defendant would operate to shift to the defendant the burden to prove it did not acquire or use the trade secrets. Such a burden shift is improper. It always is the plaintiff's burden to prove its claims, and if the circumstantial evidence is consistent with the defendant's direct evidence—that is, if it does not contradict the direct evidence—there is no dispute of fact sufficient to deny the defendant a grant of summary judgment.

<u>Id</u>. at 1353 (citations omitted). Given Plaintiffs' testimony that there is no evidence that Gillen wrongfully accessed, used, or disclosed the Purported Trade Secrets; and all that exists is direct evidence showing that Gillen ***did not*** use or disclose the Purported Trade Secrets, there is no triable issue of fact to support misappropriation.

3. <u>FAILURE TO ESTABLISH CAUSAL LINK</u>

Further, Plaintiffs must show "a causal link between [Gillen's] possession of an alleged trade secret and [EPIC] obtaining business from [Plaintiff's] customers." <u>Painters Supply & Equip. Co. v. Barkwell</u>, 1:20-CV-03985-SDG, 2020 WL 7051337, at *2 (N.D. Ga. Dec. 1, 2020) (denying motion for preliminary injunction); *see also,* <u>Johnson Matthey Process Technologies', Inc. v. Hovey</u>, CV420-322, 2021 WL 5513988, at *6 (S.D. Ga. July 8, 2021) (complaint dismissed for failure to state a claim where [plaintiff] has not alleged how or when [defendant] disclosed or used or threatened to disclose or use its confidential information). Plaintiffs' Designee testified that he does not have any evidence of the use of any trade secrets or confidential information after Gillen's departure.[28] Absent evidence of use, Plaintiffs cannot present an issue of fact for a jury of the necessary causal link; i.e., that any alleged use of the Purported Trades Secrets resulted in business leaving Plaintiffs.

4. PLAINTIFFS MUST PROVE ELEMENTS FOR **EACH** PURPORTED TRADE SECRET – NOT ONE MEETS THE STATUTORY DEFINITION

Even if the lack of misappropriation and proximate cause did not demand summary judgment, Plaintiffs' Trade Secret Claims fail because the Purported Trade

---

[28] BKS Dep. p. 98 ln. 1-9; p. 101 ln 10 – p. 102 ln 9.

Secrets do not meet the standard. Under the GTSA, a "trade secret" is defined as:

> [I]nformation, without regard to form … which is not commonly known by or available to the public and which information:
>> (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10–1–761(4). The DTSA's definition of "trade secret" is similar, covering information which "the owner thereof has taken reasonable measures to keep such information secret;" and which "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C.A. § 1839(3).

"The plaintiff has the burden of establishing each of these statutory elements as to **each claimed trade secret**. This means that a plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist." EarthCam, Inc. v. OxBlue Corp., 49 F. Supp. 3d 1210, 1224–25 (N.D. Ga. 2014), aff'd, 703 Fed. Appx. 803 (11th Cir. 2017) (citations and punctuation omitted; emphasis supplied). "The claim fails if any of the elements are not shown." Id. at 1225.

    a.    *REASONABLE EFFORTS TO MAINTAIN SECRECY*

To be a trade secret, information must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." O.C.G.A. § 10–1–761(4); *see also* 18 U.S.C.A. § 1839(3). Reasonable efforts to maintain secrecy is a critical element of determining if information is a trade secret. In absence of such efforts, the information is not entitled to protection under the GTSA. *See*, *e.g.,* Bacon v. Volvo Serv. Ctr., Inc., 266 Ga. App. 543, 544-45, 597 S.E.2d 440, 443 (2004). Unless information is protected by contract or under the GTSA, the public policy of Georgia is that the information should otherwise flow freely in the public domain. Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007).

In HCC Ins. Holdings, Inc. v. Flowers, 237 F. Supp. 3d 1341 (N.D. Ga. 2017) defendant Flowers moved approximately 500 "Hot Sheets" from HCC's underwriting drive to her local drive. "Hot Sheets are excel spreadsheets that list prospective new business and existing policies up for renewal." Id. at 1346. The night before she resigned from HCC, Flowers deleted the Hot Sheets, then returned the laptop to HCC. Id. Flowers and a coworker had set up a competing business, CRU, before they both resigned from HCC. Id. at 1347. HCC alleged that CRU successfully "stole" several accounts, and HCC contended it was "inconceivable, in an industry with high barriers to entry, that a small, start-up company could have had such immediate success without using HCC's trade secrets." Id.

In assessing the trade secret claims, the court focused on whether the Hot Sheets were the subject of reasonable efforts to maintain their secrecy. Id. at 1350. HCC asserted that "its Business Confidentiality Policy and Enterprise Information Security Acceptable Use Policy prohibit unauthorized access, use, and disclosure of confidential information. It also notes that it protects its trade secrets through computer security measures and limiting access to servers and trade secret documents to certain designated employees." Id. at 1351 (footnote omitted). HCC's Business Confidentiality Policy defined "Confidential Information" to include "all information relating to [HCC] or its operations which is not generally known to people that are not employees of, or otherwise associated with, [HCC] whether or not designated as confidential." Id. at 1349.

Drawing parallels to Diamond Power, the court found that the Hot Sheets were not trade secrets. As a matter of law, HCC did not take reasonable efforts to maintain the secrecy of the Hot Sheets, because it did not present any evidence that it:

> (1) labeled the Hot Sheets confidential or otherwise communicated the confidentiality of the Hot Sheets directly to its employees; (2) directed its employees to maintain the secrecy of the file other than through a general confidentiality agreement that did not expressly mention the Hot Sheets; or (3) tracked the use of Hot Sheets.

Id. at 1351. The court therefore granted summary judgment to the defendants.

Here, just as in HCC, the Purported Trade Secrets (1) were **not** marked as

confidential or trade secret by SPG,[29] (2) were **not** identified as confidential or trade secret to Gillen during his employment with SPG or Plaintiffs,[30] and (3) were **not** monitored or tracked for use or disclosure.[31] Thus, **<u>none</u>** of the Purported Trade Secrets were subject to reasonable efforts to maintain secrecy.

Although Plaintiffs' Complaint references their general practices to maintain secrecy, such practices were not applied to the Purported Trade Secrets. The Purported Trade Secrets all originate from BKS' predecessor, SPG, not either of Plaintiffs.[32] After SPG was acquired by BKS, SPG's employees continued to use SPG's systems, and their access did not change.[33]

Plaintiffs rely on the confidentiality requirements in the SPG handbook and the Employee Covenant Agreement between SPG and Gillen ("SPG Agreement").[34] These documents did not specifically identify what was to be maintained secret. As an example, the SPG Agreement defined "Trade Secret" as "any form of information

---

[29] *See supra* note 2.
[30] *See supra* note 3.
[31] *See supra* note 4.
[32] BKS Dep. p. 80 ln. 25 – p. 81 ln. 6.
[33] BKS Dep. p. 206 ln. 22 – p. 207 ln. 17. BKS's designee also testified that there were no additional restrictions placed on Gillen's access to the Purported Trade Secrets once he became employed by Plaintiffs. BKS Dep. p. 160 ln. 7-11.
[34] Deposition of Gregg Schieffelbein ("Schieffelbein Dep.") p. 105 ln. 12-15; SPG Dep. p. 28 ln. 21 – p 30 ln. 17; *see also* Exhibit H (SPG Agreement); and Exhibit I (SPG Handbook). Excerpts of Schieffelbein Dep. are attached as Exhibit G.

protected by the Georgia Trade Secrets Act."[35] Plaintiffs' and SPG's designees confirmed that they would not know what to consider a trade secret by reading the SPG Agreement.[36] The overbroad nature of the confidentiality and trade secret provisions is borne out by Schieffelbein's testimony that **all** information handled by SPG employees would be considered confidential.[37] Generalized confidentiality agreements are largely not, standing alone, sufficient to demonstrate reasonable efforts to maintain the secrecy of alleged trade secrets. Equifax Services., Inc. v. Examination Management Services, Inc., 216 Ga. App. 35, 40, 453 S.E.2d 488, 493 (1994) (holding that requiring all employees to sign confidentiality agreement alone was not reasonable as a matter of law to maintain secrecy); Amerigas Propane, L.P. v. T-Bo Propane, 972 F. Supp. 685, 700-01 (S.D. Ga. 1997) (same).

Finally, Plaintiffs contend that their employees are expected to somehow "intuitively" know what trade secrets are, from their experience in the industry.[38] However, "courts have rejected the notion that an 'implicit understanding' between an employer and its employee … is sufficient to protect confidential material."

---

[35] *See* Exhibit H (SPG Agreement), ¶ 1(f).
[36] BKS Dep. p. 14 ln. 9-23; SPG Dep. p. 30 ln. 9-23.
[37] Schieffelbein Dep. p. 94 ln. 5-17 ("The only exception would be e-mailing your wife to see what's for dinner.").
[38] Deposition of John Valentine ("Valentine Dep.") p. 71 ln. 6-9; p. 74 ln. 4-9. Excerpts of Valentine Dep. are attached as Exhibit K.

Northstar Healthcare Consulting, LLC v. Magellan Health, Inc., 1:17-CV-1071-ODE, 2019 WL 4805558, at *42 (N.D. Ga. July 10, 2019) (citation omitted) (summary judgment granted on trade secrets because "implicit understanding" found to be insufficient effort to protect secrecy of information).

Per the cases cited above, Plaintiffs have not taken reasonable efforts to maintain the secrecy of any of the ninety-four (94) Purported Trade Secrets.

b.   *SEVERAL PURPORTED TRADE SECRETS ARE MERELY PAYROLL*

The fourteen (14) Purported Trade Secrets contained in Exhibit 9 to the SPG Dep.[39] show Gillen's commission details for identified pay periods.[40] SPG provided these to Gillen via email together with his payroll information.[41] They were not marked confidential and SPG is not aware of any discussions indicating that they were trade secrets.[42] In fact, Gillen was fully entitled to keep these documents.[43]

c.   *MANY PURPORTED TRADE SECRETS PUBLICLY DISCLOSED*

Information that is public knowledge or that is generally known in an industry cannot be a trade secret. If an individual **discloses his trade secret to others who are under no obligation to protect the confidentiality of the information**, or otherwise publicly discloses the

---

[39] SPG Exhibit 9 contains DEFENDANTS000375, 000379, 000381, 000387, 000391, 000394, 000396, 000399, 000401, 000403, 000405, 000408, 000414, and 000455. *See also* Exhibit A hereto.

[40] SPG Dep. p. 44 ln. 22 – p. 45 ln. 6; *see also* SPG Exhibit 9.

[41] SPG Dep. p. 46 ln. 1-6; p. 47 ln. 23 – p. 48 ln. 8; *see also* SPG Exhibit 10.

[42] SPG Dep. p. 46 ln. 19 – p. 47 ln. 5.

[43] SPG Dep. p. 47 ln. 6-8; p. 48 ln. 5-8.

secret, his property right is extinguished.

Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002, 104 S. Ct. 2862, 2872, 81 L. Ed. 2d 815 (1984) (citations omitted; emphasis added).

Many of the Purported Trade Secrets are documents that would commonly be shared with third parties, particularly customers, who were free to share them with whomever they wished.[44] For example, EPIC00017059 is a summary of insurance coverages for a client.[45] It combines information provided by insurance carriers and the client, formatted by SPG.[46] SPG's designee testified that SPG likely would have shared EPIC00017059 with the client, and that there was no restriction keeping the client from sharing the document with others – including any other competitor of SPG.[47] Similarly, EPIC00021059 is a summary that SPG would have provided to the client that included coverage limits, deductibles, and premiums for certain insurance.[48] SPG's designee testified that he was not aware of any restriction on the

---

[44] SPG Dep. p. 54 ln. 12-20; p. 55 ln. 15-21; p. 57 ln. 24 – p. 58 ln. 24; p. 60 ln. 20 – p. 61 ln. 8; p. 62 ln. 5-8; p. 63 ln. 17-22; p. 65 ln. 21-24; p. 66 ln. 13-22; p. 68 ln. 9-12; p. 69 ln. 1-15; p. 70 ln. 22-25; p. 71 ln. 18-24; p. 73 ln. 16-22; p. 76 ln. 8-14; p. 77 ln. 23 – p. 78 ln. 15; p. 79 ln. 17 – p. 80 ln. 5; p. 81 ln. 10-13; p. 82 ln. 25 – p. 83 ln. 11; p. 84 ln. 19 – p. 85 ln. 8; p. 86 ln. 21-24; p. 102 ln. 5-25; p. 204 ln. 11-15.
[45] SPG Dep. p. 72 ln. 10-17; *see also* SPG Exhibit 23.
[46] SPG Dep. p. 72 ln. 18 – p. 73 ln. 8.
[47] SPG Dep. p. 73 ln. 16-22.
[48] SPG Dep. p. 81 ln. 4-9; SPG Exhibit 27.

client providing it to third parties, including SPG's competitors.[49]

SPG's designee gave similar testimony regarding SPG Exhibits 12-30, 33, and 67 ("Third Party Disclosed Documents").[50] "These admissions defeat any credible claim at this stage that the … information found in [plaintiff's documents] … are the subject of reasonable efforts to maintain their secrecy." Smart Profitability Sols., LLC v. Double Check Risk Sols., LLC, 1:18-CV-706-MHC, 2018 WL 6380886, at *10 (N.D. Ga. Aug. 2, 2018) (making this finding regarding documents marked confidential, but provided to customers without limiting their right to disclose them to others); see also EarthCam, Inc., 49 F. Supp. 3d at 1227 (finding that plaintiff "fundamentally fails to meet what is required to assert a trade secrets claim" where customers could publicize the information).

"Information that has been publicly disclosed, such as through the sale or disclosure to customers, is not protected by the GTSA." Diamond Power, 540 F. Supp. 2d at 1332-33.

> Because the information has been placed into the public domain, any reasonable expectation of secrecy is destroyed. Thus, where the plaintiff has distributed to its customers schematic diagrams, repair instructions, product manuals, or similar information—even if they are labeled "proprietary" or "confidential"—the plaintiff's failure to maintain its secrecy precludes trade secret protection.

---

[49] SPG Dep. p. 81 ln. 10-13.
[50] See supra note 45; Exhibit A, "Provided to 3rd party w/o restriction" column.

Id. at 1333 (internal quotation marks and citation omitted). Because the Third Party Disclosed Documents were disclosed to customers and other third parties, they cannot meet the definition of "trade secret" under the GTSA or DTSA.

>    d.    *MANY PURPORTED TRADE SECRETS ARE EXPRESSLY NOT "CONFIDENTIAL INFORMATION"*

Plaintiffs admitted that many of the Purported Trade Secrets came from third parties.[51] Per the SPG Agreement, such documents and information are expressly not Confidential Information. The SPG Agreement provides as follows: "'Confidential Information' … shall not mean any data or information … which has been independently developed and disclosed by others …." Such information independently developed and disclosed by others includes, for example, information provided to Gillen and/or SPG by clients;[52] lists purchased from third parties;[53] and documents obtained from insurer's websites.[54] SPG's designee conceded that SPG Exhibits 12-31, 33-38, 45-46, 49, 54-58, 60, 63-64, 69-71 are information and documents provided by third parties ("Third Party Information Documents").[55] Per the SPG Agreement, Third Party Information Documents are not confidential. As

---

[51] *See supra* note 6.

[52] *See, e.g.,* SPG Dep. p. 54 ln. 5-8; p. 55 ln. 12-14; p. 57 ln. 15-19; p. 62 ln. 2-4; p. 63 ln. 14-16; p. 65 ln. 16-20.

[53] SPG Dep. p. 166 ln. 16-19; *see also* SPG Exhibit 57.

[54] SPG Dep. p. 103 ln. 7 – p. 104 ln. 9; *see also* SPG Exhibit 34.

[55] *See supra* note 6; Exhibit A, "3rd party documents" column.

such, they are not trade secrets.

    *e.    NO EVIDENCE OF ECONOMIC VALUE - ONLY IDENTIFIED AS "TRADE SECRETS" RETROACTIVELY*

Despite multiple amended responses, Plaintiffs' discovery responses never identified an economic value associated with any Purported Trade Secret.[56] SPG is not aware of any specific dollar value for any of the Purported Trade Secrets.[57]

> A plaintiff also must allege and show that the claimed information [d]erives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use …

EarthCam, Inc., 49 F. Supp. 3d at 1225 (internal quotations omitted). It is telling that none of the Purported Trade Secrets were identified as "trade secrets" until months after this litigation began.[58] Plaintiffs' counsel selected and designated the Purported Trade Secrets after discussions with Gregg Schieffelbein;[59] no one else was involved.[60] Despite Plaintiffs' counsel's designation, Plaintiffs' Designee admitted that SPG Exhibits 50, 75, 76 and 83 are not trade secrets.[61]

---

[56] *See, e.g.*, BKS Supp. Answers [Doc. 183-1], Response to Interrogatory No. 8.
[57] SPG Dep. p. 232 ln. 21 – p. 233 ln. 1.
[58] BKS Dep. p. 84 ln. 4-10.
[59] SPG Dep. p. 36 ln. 11-19.
[60] SPG Dep. p. 36 ln. 20-23. Plaintiffs' Designee testified that he did not know who selected the Purported Trade Secrets, but suspected it was Plaintiffs' counsel. BKS Dep. p. 107 ln. 16-25; p. 108 ln. 21 – p. 109 ln. 6; p. 190 ln. 6-22.
[61] BKS Dep. p. 173 ln. 10-16; p. 173 ln. 19 – p. 174 ln. 2; p. 174 ln. 6-11; p. 182 ln. 17-19; *see also* SPG Dep. 220 ln. 1-16; Exhibit A, "Other" column.

Plaintiffs' practices show little concern for trade secrets prospectively. BKS testified that Plaintiffs do not identify documents as trade secrets in the normal course of business.[62] Further, BKS testified that there is no need for employees to understand the difference between trade secret and confidential, because they are treated "exactly the same."[63] Indeed, in the asset purchase of SPG, BKS did not even ask SPG to identify any specific documents as trade secrets, and SPG did not do so.[64]

## 5. TRADE SECRETS CONCLUSION

Defendants request summary judgment on the Trade Secret Claims because there is (a) no evidence of misappropriation (no access, use or disclosure), (b) no evidence that any use or disclosure proximately caused damage to Plaintiffs, and (c) the statutory definition of trade secret is not met. Plaintiffs did not make reasonable efforts to maintain secrecy because (i) the Purported Trade Secrets were not marked as confidential or a trade secret, (ii) were never communicated to be confidential or trade secret, and (iii) any use and disclosure was not monitored nor tracked. Further, there is no evidence of economic value. Finally, Third Party Information Documents are not "Confidential Information" and Third Party Disclosed Documents were disclosed to customers and others without restriction and thus are not trade secrets.

---

[62] BKS Dep. p. 83 ln. 23 – p. 84 ln. 3.
[63] BKS Dep. p. 91 ln. 22 – p. 92 ln. 11.
[64] Valentine Dep. p. 68 ln. 23 – p. 69 ln. 4.

C. <u>PLAINTIFFS' BREACH OF CONTRACT CLAIMS</u>

Plaintiffs' Breach of Contract claim alleges that Gillen breached restrictive covenants within the SPG Agreement, specifically covenants addressing non-solicitation, non-competition and confidentiality. Such claim fails because the non-compete is overly broad and an unenforceable restriction upon accepting unsolicited customers; there is no evidence of solicitation; and no evidence of access, use, disclosure, or improper retention of any confidential property. Significantly, there is absolutely no evidence tying an alleged breach to any claimed damages.

1. BREACH OF CONTRACT ELEMENTS AND PROOF REQUIREMENTS

"In Georgia, the elements of a breach of contract claim are '(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'" <u>Painters Supply & Equip. Co. v. Barkwell</u>, 1:20-CV-03985-SDG, 2020 WL 7051337, at *3 (N.D. Ga. Dec. 1, 2020) (citation omitted). Further, to survive summary judgment on the restrictive covenants, Plaintiffs must present evidence of a specific breach that resulted in actual damages. For the non-solicitation provision, Plaintiffs must present evidence (more than speculation) showing (1) that Gillen solicited a Customer and (2) that resulted in damages. Mere acceptance is insufficient. Similarly, in respect to the confidentiality provision, Plaintiffs must present evidence that a breach of that provision caused Plaintiffs damage, e.g.,

caused a customer to leave Plaintiffs. *See,* Am. Control Sys., Inc. v. Boyce, 303 Ga. App. 664, 671, 694 S.E.2d 141, 147 (2010) (summary judgement affirmed because former employer failed to 'come forward with evidence giving rise to a triable issue' of solicitation). *See also,* Gen. Assur. of Am., Inc. v. Overby-Seawell Co., 893 F. Supp. 2d 761, 777 (E.D. Va. 2012), aff'd, 533 Fed. Appx. 200 (4th Cir. 2013) (reconsideration of summary judgment denied where no evidence that former employees breached the non-solicitation or non-disclosure provisions). Further, "to prevail on the claim, [Plaintiffs] must also prove 'damage proximately caused by the breach.'" Glob. Payments Direct, Inc. v. Frontline Processing Corp., 360 Ga. App. 753, 763-764, 859 S.E.2d 909, 916-917 (2021) (citation omitted).

### a.   *PER GEORGIA LAW, ACCEPTING UNSOLICITED BUSINESS IS NOT A VIOLATION OF THE SPG AGREEMENT*

The SPG Agreement cannot prohibit the acceptance of unsolicited business. As this Court noted in the Capital Inventory matter, "[t]he distinction between soliciting business and accepting business is entrenched in Georgia law and central to the history of this case." Capital Inventory, Inc. v. Green, 1:20-CV-3224-LMM, 2021 WL 2451508, at *2 (N.D. Ga. May 12, 2021). "… Georgia law—before and after the advent of blue-penciling—has strongly disfavored post-employment restrictions on accepting unsolicited business." Id. *See also*, Order dated July 13, 2021 [Doc. 107] pp. 10-11 (recognizing Georgia courts' strong disfavor for "post-

employment restrictions on *accepting* unsolicited business").

"Consistent with [the Georgia Restrictive Covenants Act, O.C.G.A. § 13-8-50 *et seq.* ("GRCA")] …, Georgia holds (and has held for some time) that [a] restrictive covenant may not validly preclude the employee from accepting unsolicited business from customers of his former employer. DJR Associates, LLC v. Hammonds, 241 F. Supp. 3d 1208, 1227–28 (N.D. Ala. 2017) (citations and punctuation omitted). *See also,* Arthur J. Gallagher & Co. v. Ausherman, 2018 WL 3760665, at *6-7 (Ga.Super.) (finding a client-based restrictive covenant prohibiting former employees from servicing unsolicited clients is not authorized by the GRCA and is void, following DJR);[65] Refresco Beverages US Inc. v. Califormulations, LLC, 4:20-CV-181 (CDL), 2021 WL 4316015, at *11 (M.D. Ga. Sept. 22, 2021) (blue-penciling overbroad non-solicitation provision because it prevented former employee from accepting or servicing any unsolicited business from customers); Gen. Assur. of Am., Inc., 893 F. Supp. 2d at 775 (holding under Georgia law that

---

[65] Judge Grimberg in Gallagher Benefit Servs., Inc. v. Campbell, 528 F. Supp. 3d 1326, 1340 (N.D. Ga. 2021) expressly disagreed with the holdings in DJR and Arthur J. Gallagher & Co. With due respect, the Gallagher Benefit decision does not appear to consider that (a) the GRCA is in derogation of the common law and must be strictly construed, and (b) to the extent that statutory text can be read to conform to the common law, the courts are to presume that the legislature meant to adhere to the common law. Such decision appears to be an anomaly, as several courts are in line with Capital Inventory, Refresco, DJR and Arthur J. Gallagher & Co.

any provision barring unsolicited business would be overbroad and unenforceable).

The SPG Agreement's paragraph 4(c) sets forth the following language:

> … **Employee will not,** on behalf of a Competing Business, either directly or indirectly through the assistance of others, **sell any products or services that are competitive with any aspect the Company Business to any actual or known prospective customer of the Company** ….

SPG Agreement ¶ 4(c) (emphasis added) ("Non-Compete Provision"). The Non-Compete Provision attempts to prohibit the sale of any products or services, to bar Gillen from accepting or servicing customers who choose to continue doing business with Gillen even in the absence of solicitation. As held in the cases cited above, provisions barring the ability to sell or attempt to sell goods or services, in the absence of solicitation, are overbroad and unenforceable. The Non-Compete Provision is therefore void and unenforceable under Georgia law.

*b.*     *PLAINTIFFS CANNOT PROVE SOLICITATION*

To create a jury issue on the non-solicitation provision, Plaintiffs must present evidence that Gillen personally petitioned the Customers to do a particular act, i.e., change their respective broker of record to EPIC.

> We have interpreted the term "solicit" to involve a "personal petition and importunity addressed to a particular individual to do some particular thing," that is, the employee must make some "affirmative action" to reach out to customers. Akron Pest Control v. Radar Exterminating Co., 216 Ga. App. 495, 497 (1), 455 S.E.2d 601 (1995); *see also* Murphree v. Yancey Bros. Co., 311 Ga. App. 744, 748-749

> (1), 716 S.E.2d 824 (2011) (non-solicitation provision prohibiting former employee from "directly or indirectly soliciting, diverting, or taking away (or attempting to do so)" the former employer's customers **only prohibited the former employee from "initiating affirmative action to compete** with [his former employer] by contacting former customers"). **Dermatology did not produce any direct evidence that Smith affirmatively reached out to any of its patients to solicit them to come to SCS or away from Lane Dermatology and thus this argument is without merit.**

Lane Dermatology v. Smith, 360 Ga. App. 370, 374–75, 861 S.E.2d 196, 202 (2021) (emphasis supplied). Plaintiffs must present evidence of solicitation by Gillen and that such solicitation proximately caused Plaintiffs damage; the mere loss of accounts is not sufficient to carry such burden. Coffee Butler Serv., Inc. v. Sacha, 208 Ga. App. 4, 7, 430 S.E.2d 149, 152 (1993) (summary judgment affirmed where no proximate cause, holding "[plaintiffs] may not rest on suppositions and its contention that the jury might make inferences from the mere fact of the loss of the accounts.")

Responding to requests for proposals likewise does not violate a non-solicitation provision.

> Here, the undisputed facts establish that OSC did not initiate contact with [customers]. In the end, GAA cites no case—and none has been found—in which a sales pitch made after the customer initiated contact and requested the pitch constitutes solicitation under Georgia law.

> Indeed, a construction of the non-solicitation clause that would prohibit OSC from making sales pitches to GAA clients that seek OSC's business or otherwise initiate contact with OSC would be overbroad

and therefore unenforceable inasmuch as the provision, so understood, would overprotect GAA's legitimate competitive interests at the expense of the ability of GAA's current and prospective clients to select their preferred services.

Gen. Assur. of Am., Inc., 893 F. Supp. 2d at 775 (footnotes omitted).

In Am. Control Sys., Inc. v. Boyce, 303 Ga. App. 664, 671, 694 S.E.2d 141, (2010), just as the present matter, the plaintiff alleged that a former employee solicited certain customers in violation of a non-solicitation provision. In response, the defendants presented customer affidavits affirmatively showing that such customers "had 'procured' and 'requested,' respectively, the [former employee's] services thereafter." Id. at 146–47.

Accordingly, [former employee] pointed to evidence showing that he did not induce or solicit [customers] to leave [plaintiff], but that each did so its own initiative. Because [former employee] discharged his burden of showing an absence of evidence as to [plaintiff's] claim that he breached the nonsolicitation covenant, [plaintiff] was required to "come forward with evidence giving rise to a triable issue."

Id. Because plaintiff failed to come forward with actual evidence of a breach of the non-solicitation covenant, summary judgment was affirmed. Id.

Like Am. Control Sys., Inc., Plaintiffs have not provided any evidence, other than mere speculation, that Gillen solicited any of the Customers. Decision-makers for the Customers have testified that they chose to follow Gillen to EPIC independently and without any inducement or solicitation from Gillen or anyone

acting on his behalf.[66] Decision-makers for ten of the Customers testified that they would not have remained with Plaintiffs even if they could not follow Gillen.[67] Further, Plaintiffs have presented no evidence that three other Customers left because of any solicitation by Gillen; rather they testified to contacting Gillen first.[68]

The mere fact that Plaintiffs lost accounts does not establish that solicitation was the proximate cause. At least two other former customers of Gillen's have stopped using Plaintiffs, specifically Core Clinical and Bela Kudish, M.D. of Bela Vida Urogynecology.[69] Core Clinical did not follow Gillen to EPIC, but rather, according to Plaintiffs' counsel, went to another broker.[70] Further, Dr. Kudish's email evidenced her poor experience and dissatisfaction with Plaintiffs' service.[71]

Further, Plaintiffs' Designee conceded that Plaintiffs are not aware of any facts that contradict any of the Customers Declarations, i.e., that the Customers chose to follow Gillen without inducement or solicitation.[72] Because Defendants discharged their burden of showing an absence of evidence, Plaintiffs are "required

---

[66] *See supra* note 12.

[67] Apex Decl. ¶ 11; Bhagat Decl. ¶ 10; Schaffer Decl. ¶ 9; Genesee Decl. ¶ 12; TMS Decl. ¶ 11; Metro Decl. ¶ 9; Duhl c 19; Cohn Decl. ¶ 12.

[68] PGS Decl. ¶ 4; Veritas Decl. ¶¶ 4-9; Relias Decl. ¶¶ 4-9.

[69] *See* emails filed at [Doc. 119-1] in accord with the Court's Sept. 15, 2021 Order [Doc. 118] ("Specific Customer Emails") pp. 2-3.

[70] Specific Customer Emails [Doc 119-1] p. 3.

[71] Specific Customer Emails [Doc 119-1] p. 14.

[72] BKS Dep. p. 30 ln. 6 – p.33 ln 24.

to 'come forward with evidence giving rise to a triable issue.'" <u>Am. Control Sys., Inc.</u>, 303 Ga. App. at 671, 694 S.E.2d at 147 (citation omitted). As the record is devoid of any evidence that Gillen solicited the Customers and that such solicitation proximately caused a Customer to leave Plaintiffs, Plaintiffs' breach of the non-solicitation provision fails as a matter of law.

c.   *BREACH OF CONFIDENTIALITY PROVISION CLAIM FAILS BECAUSE NO EVIDENCE OF USE, ACCESS, OR DAMAGES*

Like the Trade Secret Claims, Plaintiffs' breach of confidentiality fails because there is no evidence of use, access, or damages. To survive summary judgment, Plaintiffs must specifically identify what confidential information was disclosed to a particular third party, and the resulting damages. *See, e.g.,* <u>Gen. Assur. of Am., Inc.</u>, 893 F. Supp. 2d at 776-77 (summary judgment reconsideration denied because plaintiff's designee could not identify specifically any confidential information disclosed in sales pitches, and record was devoid of evidence that any confidential information was ever disclosed).

In <u>Glob. Payments Direct, Inc. v. Frontline Processing Corp.</u>, 360 Ga. App. 753, 763-764, 859 S.E.2d 909, 916-917 (2021), the Georgia Court of Appeals reaffirmed that with all breach of contract claims, including a breach of a confidentiality provision, "to prevail on the claim, [Plaintiffs] must also prove 'damage proximately caused by the breach.'" Plaintiffs are required to present

evidence that a document was disclosed in violation of the confidentiality provision, and that such document's disclosure proximately caused the damages. <u>Id.</u> As no witness testified that any damage directly resulted from the public disclosure of the identified document, the Court of Appeals found that the trial court erred in denying a motion for directed verdict.

Like <u>Gen. Assur. of Am., Inc.</u>, Plaintiffs' Designee testified he was not aware of the use of "any of the information alleged to --- alleged by BKS to be taken after [Gillen's] departure from BKS."[73] Further, Plaintiffs Designee testified that he was not aware of Gillen ever disclosing any of the Purported Trade Secrets.[74] Because Plaintiffs admit that they are not aware of any use or disclosure of any confidential document, Plaintiffs' claimed breach of the SPG Agreement's confidentiality provision fails as a matter of law.

## 2. CONCLUSION –BREACH OF CONTRACT

Defendants request summary judgment on Plaintiffs' Count III Breach of Contract (Gillen) because: (a) the SPG Agreement's Non-Compete provision barring the acceptance of unsolicited customers is overbroad and thus unenforceable and void, (b) the record contains no evidence of solicitation, (c) the record contains no

---

[73] BKS Dep. p. 26 ln. 15-20.
[74] BKS Dep. p. 198 ln. 23 – p. 199 ln. 5.

evidence of the use or disclosure of any confidential information, (d) as there is no

evidence solicitation or the disclosure or use of confidential information, Plaintiffs

cannot establish any alleged breach proximately caused any damages.

D. PLAINTIFFS' TORTIOUS INTERFERENCE CLAIMS

    Plaintiffs' Count IV, Tortious Interference with Contract ("TI Claim") alleges

that EPIC tortiously interfered with the SPG Agreement by inducing or permitting

Gillen to breach the restrictive covenants set forth therein.[75] The TI Claim fails

because (a) as set forth above, there is no evidence that Gillen breached the

restrictive covenants, and (b) the record is devoid of an improper action or wrongful

conduct by EPIC purposely taken with malice with the intent to injure Plaintiffs.

> In order to demonstrate a tortious interference with contract, a plaintiff must prove four elements:
>
> > (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.
>
> Generally speaking, a so-called improper action means "predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." It is not enough to show that a defendant "simply persuaded a person to break a contract."

---

[75] Complaint [Doc. 1] ¶¶ 118 – 121.

BB&T Ins. Servs., Inc. v. Renno, 361 Ga. App. 415, 427–28, 864 S.E.2d 608, 619–20 (2021) (Footnotes omitted).

First, there is no basis for a tortious interference claim absent proof that Gillen breached an enforceable restrictive covenant. *See,* Arthur J. Gallagher & Co. v. Ausherman, 2018 WL 3760665, at *7 (Ga.Super.) (summary judgment granted on tortious interference where no breach of enforceable provision in employment agreement). Because no restrictive covenant was breached, the TI Claim fails as a matter of law.

Plaintiffs' TI Claim alleges that EPIC knew of the SPG Agreement and induced Gillen to breach it. However, "mere knowledge that an employee has a noncompete agreement is insufficient to create a claim for tortious interference as there must also be evidence to show that [EPIC] acted maliciously to induce the breach." Gordon Document Products, Inc. v. Serv. Techs., Inc., 308 Ga. App. 445, 452, 708 S.E.2d 48, 55 (2011) (summary judgment affirmed where no evidence that defendant acted in a way to defeat the privilege of fair competition, nor evidence of trying to drive plaintiff out of business). "The record does not support that Defendant engaged in any act that involved predatory tactics or any act that was wrongful in itself. ... '**Fair competition is always legal**, …'" Matthew Focht Enterprises, Inc. v. Lepore, 1:12-CV-04479-WSD, 2013 WL 4806938, at *7 (N.D. Ga. Sept. 9, 2013)

(emphasis added). Further, "in the absence of evidence showing a malicious intent to injure, no action could be maintained against [EPIC] on this claim." Jackson v. Nationwide Credit, Inc., 206 Ga. App. 810, 812, 426 S.E.2d 630, 632 (1992).

Plaintiffs' Designee conceded that there is no evidence of predatory tactics such as physical violence, fraud or misrepresentation, defamation, abusive civil suits, and unwarranted criminal prosecutions.[76] Plaintiffs also testified that they have no knowledge of any use of Plaintiffs' confidential information.[77] Further, there is no evidence that EPIC induced Gillen to breach any aspect of the SPG Agreement.

When Gillen was recruited to join EPIC, he was instructed that he could not retain any proprietary or confidential information belonging to Plaintiffs, nor could he utilize any such information while employed at EPIC.[78] Plaintiffs testified that they had no evidence to the contrary, and that EPIC's instructions were similar to their own instructions for new hires.[79]

Because the record is devoid of actual evidence of any wrongful or improper action of EPIC, Defendants request summary judgement on Plaintiffs' Count IV.

---

[76] BKS Dep. p. 69 ln. 1 – p. 72 ln. 12.
[77] BKS Dep. p. 149 ln. 15-16; p. 153 ln. 9-11; p. 192 ln. 23 – p. 193 ln. 5.
[78] Crawford Decl. [Doc. 16-1] ¶ 2; Gillen Decl. [Doc. 16-2] ¶ 23; *see also* BKS Dep. p. 199 ln 18 – p. 200 ln. 10 (BKS not aware of anything that would contradict Mr. Crawford's testimony).
[79] BKS Dep. p. 199 ln. 18 – p. 200 ln 14.

E.  <u>PLAINTIFFS' CLAIM FOR ATTORNEYS' FEES</u>

Plaintiffs' Count V Attorneys' Fees is an ancillary claim, which fails in the absence of a substantive claim. *See*, <u>J. Kinson Cook of Georgia, Inc. v. Heery/Mitchell</u>, 284 Ga. App. 552, 560, 644 S.E.2d 440, 449 (2007).

## III.   CONCLUSION

"Essentially, a motion for summary judgment is a means by which to 'challenge the opposing party to 'put up or shut up' on a critical issue.'" <u>Cox v. Kentucky Dep't of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995). Despite Plaintiffs' allegations of nefarious conduct, the evidence establishes that Gillen and EPIC did nothing wrong. Gillen chose to work for EPIC and Customers independently chose to follow Gillen. Nothing bars Gillen from choosing a new employer, nor EPIC from hiring him. Further, the Trade Secret Claims were never appropriate. Plaintiffs' witnesses conceded that they could not determine what a trade secret was, nor did they identify any before the litigation. Plaintiffs required their counsel to identify the Purported Trade Secrets, months into this litigation. As no agreement was breached nor tort committed, Defendants respectfully request that this Court grant summary judgment on all claims.

This 11th day of June, 2022.

/s/ John E. Bellus, Jr.
John E. Bellus, Jr.
Georgia Bar No. 049728
F. R. Josh Stone
Georgia Bar No. 684075
Melissa Buckshorn
Georgia Bar No. 315480

Stone & Bellus, P.C.
6849 Peachtree Dunwoody Rd.
Building B-3, Suite 100
Atlanta, Georgia 30328
Telephone: (770) 390-9950
john@stonebellus.com
josh@stonebellus.com
melissa@stonebellus.com

Steven D. Pearson
Illinois Bar No. 6190506

Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6954
sdpearson@freeborn.com
*Admitted pro hac vice*

**Attorneys for Defendants**

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

*/s/ John E. Bellus, Jr.*
John E. Bellus, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed this DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which will send electronic notification to all participating attorneys of record:

Todd C. Duffield
Susanna J. Bramlett
Katherine H. Krouse
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia 30303
Todd.duffield@ogletree.com
Susanna.bramlett@ogletree.com
Katie.krouse@ogletree.com

Daniel P. Johnson – *admitted pro hac*
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
4520 Main Street, Suite 400
Kansas City, Missouri 64111
Daniel.johnson@ogletree.com

This 11th day of June, 2022.

_/s/ John E. Bellus, Jr._____
John E. Bellus, Jr.